UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL ANN McBRATNIE,

        Plaintiff,

v.

SCOTT BESSENT, Acting
Commissioner IRS,

        Defendant.

_____/

Case No. 5:25-cv-12614
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND (ECF No. 35), STRIKING PLAINTIFF'S "MOTION TO DISMISS" (ECF No. 31), AND DENYING AS MOOT PLAINTIFF'S TWO MOTIONS RELATED TO SERVICE (ECF Nos. 10 &13)
AND
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No. 20) AND TO DENY PLAINTIFF'S PENDING MOTIONS FOR PRELIMINARY INJUNCTION (ECF Nos. 21, 25)**

I.    **ORDER**:

For the reasons discussed below, Plaintiff's motion to amend (ECF No. 35) is **DENIED** and Plaintiff's motion to dismiss (ECF No. 31) is **HEREBY STRICKEN.** Plaintiff's two motions related to service (ECF Nos. 10 & 13) are **DENIED AS MOOT**.

## II.   RECOMMENDATION

Additionally, the Court should **GRANT** Defendant's motion to dismiss. (ECF No. 23.)  Plaintiff's two motions for preliminary injunction (ECF Nos. 21, 25) should be **DENIED**.

## III.   REPORT ON MOTION TO DISMISS AND MOTIONS FOR INJUNCTIVE RELIEF

### A.   Background

On August 20, 2025, Plaintiff Carol Ann McBratnie, proceeding *in pro per*, brought the instant lawsuit against Scott Bessent, Acting Commissioner of the Internal Revenue Service ("IRS"), related to Plaintiff's tax liability for tax years 2013 through 2024.  (ECF No. ECF No. 1, PageID.15.)

Plaintiff alleges that in 2013 she "overpaid her estimated taxes by about $8,000 and chose to carry forward that amount to 2014."  (ECF No. 1, PageID.5.) She alleges that in the next four subsequent years, "part of the carried forward amount remained," and Plaintiff carried it forward to 2014, 2015, 2016, 2017, and then 2018.  (ECF No. 1, PageID.5-6.)  In 2018, Plaintiff "attempted to carry it forward to 2019" but the "original overpayment from 2013 was finally used up in 2018 per McBratnie's tax form filings."  (ECF No. 1, PageID.6.)

In 2015, Plaintiff received a "Notice of Deficiency" from the IRS, which was litigated in the US Tax Court.  (*Id.*)  Plaintiff's complaint is somewhat confusing as to her allegations regarding the Tax Court, but she appears to allege

2

that, related to the 2015 proceedings, the "2015 IRS Examiner corrupted the 2015 tax transcript" which "introduced accounting changes affecting the carried forward overpayment" for years 2016 to 2019.  (ECF No. 1, PageID.7.)  Plaintiff asserts this "manifested as a math error in 2017 when the carryforward amount was prematurely depleted."  (ECF No. 1, PageID.7.)  The focus of Plaintiff's complaint is indeed the 2017 tax year and the resulting effects of the alleged math error.

Plaintiff alleges that "[p]roper accounting for the carried forward Tax overage from 2013 through 2018 . . . should resolve any alleged debt for 2017."  (*Id.*)  Plaintiff seeks to compare the "Tax Transcripts/Record of Accounts" from the 2015 proceedings to her tax forms filed from 2013 to 2019 in order to "identify where IRS accounting went wrong."  (*Id.*)

Plaintiff alleges that in 2019 she requested a Collection Due Process ("CDP") Hearing for her 2017 income tax liability, and further alleges that due to this request the CDP Hearing "switch" was "turned on" which halted collection proceedings.  (ECF No. 1, PageID.8.)  She claims that IRS internal procedures turn the CDP Hearing switch "off if a voluntary payment is made by the taxpayer, as a voluntary payment towards the debt waives the hearing request."  (*Id.*)  She further claims that in her instance, the IRS re-assigned her 2019 tax payment to tax year 2017, which turned "off" the switch and the IRS "no longer recognized that a Hearing had been requested."  (*Id.*)  According to Plaintiff, when the 2019 tax

3

payment was later restored to tax year 2019, "the IRS then sent a new lien levy letter demanding payment," which was "brought to the attention of IRS Counsel, who corrected [the switch] back to 'on' indicating that [Plaintiff] was awaiting that independent hearing." (*Id.*) Plaintiff asserts that the switch was turned back "off" in 2025, when the IRS "'fabricated' a then dollar overpayment for 2016," which gave a $10 refund. (ECF No. 1, PageID.9.) Thus, Plaintiff intimates, she is still due a CDP Hearing. (*Id.*)

Plaintiff's complaint does not delineate specific counts, but rather states that she is "pursuing a claim under one of the following," and then sets forth three purported, alternative bases for relief:

- Of the nature of Mandamus under 28 U.S. Code § 1361 *Action to Compel an Officer of the United States to Perform his Duty,* for the IRS to provide the Statutorily Required Collections Due Process hearing within 30-90 **post complying with production of documents above**; or

- Under the Administrative Procedures Act, under Judicial Review at 5 U.S. Code § 706(1) to *compel Agency action unlawfully withheld (six years withheld) or unreasonably delayed,* for the IRS to provide the Statutorily Required Collections Due Process hearing within 30-90 days **post complying with production of documents above**; or

- Under the Administrative Procedures Act under Judicial Review at 5 U.S. Code § 706(2) hold the behavior of the IRS to be unlawful and for this Court to make the decision based on the requested production of documents.

4

(ECF No. 1, PageID.2-3 (emphases in original).)  Plaintiff's complaint also includes a list of "what is now needed from this Court by this Complaint."  (ECF No. 1, PageID.10.)  Specifically, she asks the Court:

- To order the "Collections due Process Hearing 'switch'" be turned back on in the interim;

- To suspend collections actions until after the statutorily required hearing is held;

- To order the IRS to provide the evidence for tax years 2013-2019 identified above, to establish that no deficit truly exists other than what was created by modification of McBratnie's 2015 tax transcript by the 2015 IRS Examiner that the IRS never restored;

- An order in the nature of Mandamus to the IRS to provide the statutorily required "independent" hearing after providing McBratnie with the tax evidence above; or,

- Alternatively, production of tax form, Tax Transcript and Record of Account accounting data for this Court to determine if a true "math error" occurred, or if the 2015 Tax Examiner tampering with the tax transcript was causative of 2017's lien levy.

(ECF No. 1, PageID.9-10.)  The crux of Plaintiff's complaint appears to revolve around her tax liability for 2017 and the resultant effects.

This case has been assigned to U.S. District Judge Judith E. Levy, who referred the matter to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)."  (ECF No. 9, PageID.53.)

Defendant filed a motion to dismiss on January 8, 2026 based on lack of subject matter jurisdiction and failure to state a claim under Fed. R. Civ. P. 12(b)(1)&(6).  (ECF No. 20.)  Plaintiff filed a response to the motion to dismiss (ECF No. 30), as well as a document entitled "Plaintiff's Affirmative Defenses to Defendant [IRS]'s Motion to Dismiss," which the Clerk of the Court docketed as a motion to dismiss.[1]  (ECF No. 31.)  Also pending before the Court are two motions for preliminary injunction (ECF Nos. 21 & 25) and two motions related to service (ECF Nos. 10 & 13), all filed by Plaintiff.

B.     **Standard**

   **1. Fed. R. Civ. P. 12(b)(1)**

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  In reviewing a motion under Rule 12(b)(1), the "court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum Coll*., 318 F.3d 674, 677 (6th Cir. 2003). When faced with a challenge to subject matter jurisdiction, "a court must address that issue before all others." *Cain v. Redbox*

---

[1] Because this motion is an impermissible second brief in opposition to the motion to dismiss, the Court will strike it and not consider it.

*Automated Retail*, LLC, 981 F. Supp. 2d 674, 681 (E.D. Mich. 2013) (collecting cases).

Motions under Rule 12(b)(1) fall into two categories: "facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges "the sufficiency of the pleading itself," and the "court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*.  A factual attack does not challenge the sufficiency of the allegations, but is a "challenge to the factual existence of subject matter jurisdiction." "[N]o presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear a case." *Id*. (internal citation omitted).

### 2. Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations" but must contain more than

7

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

C.    Discussion

Plaintiff's *pro se* complaint seeks various forms of injunctive and declaratory relief.  Because the claims are not clearly delineated, Defendant has

attempted to categorize them according to the allegations set forth in the

Complaint, which I believe to fairly categorize Plaintiff's complaint.  Specifically,

Defendant asserts that Plaintiff's "claims for relief fall within three categories: (1)

an injunction ("the Injunction Claim"), (2) an order in "the nature of mandamus"

([ECF No. 1,] PageID.2, 10) ("the Mandamus Claim"), and, (3) an alternative

request for declaratory judgment ("the Declaratory Claim")."  (ECF No. 20,

PageID.115.)

### 1.    The Injunction Claim

Defendant first argues that Plaintiff's requests for injunctive relief are

improper.  Defendant states:

> The Injunction Claim seeks "to halt collections actions by Defendant IRS
> Agency regarding tax year 2017" until after McBratnie is afforded a CDP
> hearing. See PageID.2; see also PageID.9 (asking Court "to suspend
> collections actions until after the statutorily required hearing is held");
> PageID.15 (requesting that Court "order the IRS to comply with their
> statutory duties in suspending collections until resolve [sic] of this matter per
> statute: 26 U.S. Code § 6330 - Notice and opportunity for hearing before
> levy").

(ECF No. 20, PageID.115.)  Defendant argues that Plaintiff's requests for

injunctive relief are barred by the Anti-Injunction Act.  The Court should agree.

### a.  The Anti-Injunction Act

The Anti-Injunction Act (the "AIA") concerns the "prohibition of suits to

restrain assessment or collection" of taxes.  26 U.S.C. § 7421.  It provides that "no

suit for the purpose of restraining the assessment or collection of any tax shall be

maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. 7421(a). "The AIA has been interpreted broadly to encompass almost all premature interference with the assessment or collection of any federal tax." *RYO Mach., LLC v. U.S. Dep't of Treasury*, 696 F.3d 467, 471 (6th Cir. 2012) (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974)); *Int'l Lotto Fund v. Virg. State Lottery Dep't*, 20 F.3d 589, 591 (4th Cir. 1994) ("Regardless of how the claim is labelled, the effect of an injunction here is to interfere with the assessment or collection of a tax. The [plaintiff] is not free to define the relief it seeks in terms permitted by the Anti–Injunction Act while ignoring the ultimate deleterious effect such relief would have on the Government's taxing ability." (internal quotations omitted))). When the AIA applies, it operates to bar the district court's exercise of jurisdiction. *Id.*; *see also Tobacco Outlet Exp., LLC v. U.S. Dep't of Treasury, Alcohol & Tobacco Tax & Trade Bureau,* No. 4:12CV2095, 2012 WL 6732180, at *5 (N.D. Ohio Dec. 28, 2012) (AIA bars suit and the court therefore lacks subject matter jurisdiction).

### b. Application

Plaintiff here requests that the Court restrain the IRS's collection of her 2017 income tax liability, which on its face "falls squarely within the scope of the AIA" and its prohibition on such lawsuits. (ECF No. 34, PageID.369.) Plaintiff does not appear to dispute this characterization, but instead argues that her lawsuit is subject

10

to one of the enumerated exceptions to the AIA, specifically the exception to the AIA found in 26 U.S.C. § 6331(e)(1). *See* 26 U.S.C. § 7421(a) (listing § 6331(e)(1) as one of the exceptions to the AIA).

As the Government explains:

The backdrop to understanding § 6330(e)(1) is that the IRS may collect unpaid taxes that have been duly assessed by seizing property belonging to a taxpayer. This is generally done by means of a levy on the taxpayer's property. See 26 U.S.C. § 6331. Before the IRS can issue a levy, however, it must serve on the taxpayer a final Notice of Intent to Levy. 26 U.S.C. §§ 6330(a), 6331(d). A taxpayer to whom a final notice of intent to levy has been issued then has a right to request a CDP hearing within the 30-day period beginning the day after the date of notice. 26 C.F.R. § 301.6330-1(b)(1); *see Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 624 (6th Cir. 2005) (describing CDP procedures). If a timely request for a CDP hearing is made, then certain collection actions (except where collection of the tax is in jeopardy) are prohibited until the conclusion of the hearing and any timely requested judicial review of the IRS's administrative determination. § 6330; see also 26 C.F.R. § 301.6330-1(b).

The text of the specific provision at issue here, § 6330(e)(1), provides that if a taxpayer requests a CDP hearing under § 6330(a) with regard to an IRS levy, then "the levy actions which are the subject of the requested hearing . . . shall be suspended for the period during which such hearing, and appeals therein, are pending." § 6330(e)(1).8 "Notwithstanding the provisions of section 7421(a)"— meaning the AIA—"the beginning of a levy or proceeding during the time the suspension under this paragraph is in force may be enjoined by a proceeding in the proper court." *Id*.

(ECF No. 20, PageID.120-121.)

Plaintiff asserts that § 6330(e)(1) applies because she requested a CDP Hearing, but Defendant asserts that Plaintiff never requested a CDP Hearing. Thus, whether the exception in § 6330(e)(1) applies turns on whether she properly

requested a CDP Hearing.  Based on the allegations in the complaint, the Court should find that she did not.

Plaintiff's complaint alleges that she requested a CDP Hearing through Form 9423, which she alleges was "filed and acknowledged" on June 17, 2019.  (ECF No. 20, PageID.121.)  However, Defendant argues that Form 9423 is the vehicle through which a taxpayer can request a hearing under the Collection Appeal Program ("CAP"), which is different than a Collection Due Process Hearing ("CDP").  (ECF No. 20, PageID.121.)  Instead, the Government requires that a CDP Hearing be requested via IRS Form 12153.  (*Id.*)  Importantly, Plaintiff does not allege that she utilized Form 12153, and both parties agree that the form she submitted was a Form 9423.  Plaintiff argues instead that Form 9423 can be utilized to request either a CAP or a CDP Hearing.  (ECF No. 30, PageID.308.)  Plaintiff is wrong as a matter of law, and the allegations in her complaint do not establish she was entitled to a CDP Hearing or that she requested a CDP Hearing, and therefore the exception to the AIA related to CDP Hearings does not apply.

First, as noted by Defendant, there is nothing in Plaintiff's complaint to indicate that Plaintiff received any notice that would trigger her right to a CDP Hearing.  (ECF No. 20, PageID.122.)  The relevant regulations provide "A taxpayer is entitled to one CDP Hearing with respect to the unpaid tax and tax periods covered by the pre-levy or post-levy CDP Notice provided to the taxpayer.

12

The taxpayer must request the CDP Hearing within the 30–day period commencing on the day after the date of the CDP Notice."  26 C.F.R. § 301.6330-1(b).  Plaintiff appears to rely on a "Notice of Intent to Seize (Levy) Your Property or Rights to Property", which is submitted as Exhibit 1 to her Complaint, as the IRS "Notice" that would trigger her right to a CDP Hearing.  (ECF No. 12-1, PageID.59.)  Not only does Defendant contend this letter is not "an IRS notice that gives rise to CDP rights" (ECF No. 20, PageID.122), but this letter is dated July 21, 2025, a full six years *after* Plaintiff claims she submitted the Form 9423, which she alleges requested the CDP Hearing.  As Defendant states, "It makes no sense for McBratnie to have requested a hearing back in 2019 based on an IRS notice that she did not receive until 2025."  (ECF No. 20, PageID.123.)  Thus, Plaintiff has not alleged any IRS Notice which triggered her right to a CDP Hearing.

Second, even if she did have a right to CDP Hearing, Plaintiff has not alleged she properly requested one.  As noted above, she relies solely on the submission in 2019 of a Form 9423.  But a Form 9423 is a form entitled "Collection Appeal Request," *see* https://www.irs.gov/pub/irs-pdf/f9423.pdf (last visited 5/20/2026), and on its face applies to requests for CAPs, not CDP Hearings, whereas a Form 12152 is entitled a Request for a Collection Due Process or Equivalent Hearing, *see* https://www.irs.gov/pub/irs-pdf/f12153.pdf (last visited

5/20/2026). [2] As the tax court has held, "Form 9423, Collection Appeal Request, [is] for taxpayers to make requests for Appeals review of collection action under respondent's Collection Appeals Program (CAP). CAP is an administrative review program not required by statute." *Offiler v. Comm'r,* 114 T.C. 492, 494 (2000), *abrogation on other grounds recognized in Dunn v. Comm'r of Internal Revenue,* T.C.M. (RIA) 2026-002 (T.C. 2026).

Even a cursory glance of the two forms indicate that she requested a CAP rather than a CDP Hearing.  Plaintiff suggests that the two hearings are interchangeable but, under IRS regulations, that is not the case.  An IRS publication describes the distinction between a CAP Hearing and a CDP Hearing, and sets forth that the two hearings are not identical.  *See* Publication 1660 Collection Appeal Rights, https://www.irs.gov/pub/irs-pdf/p1660.pdf (last visited 5/20/2026).

Accordingly, based on the allegations in her complaint, Plaintiff did not

---

[2] The Court can take judicial notice of official IRS forms as matters of public record in analyzing a Rule 12(b)(6) motion.  "[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts [in public records] which are not subject to reasonable dispute." *Jones v. City of Cincinnati*, 521 F.3d 555, 561-62 (6th Cir. 2008) (quoting *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005)); *see also Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 176 (E.D.N.Y. 2013) ("[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action.").

request a CDP Hearing, but instead only requested a CDP Hearing. Moreover,

there are no allegations in the complaint which show she is entitled to a CDP

Hearing, which is only triggered by specific notices from the IRS.[3] As Plaintiff

does not allege that any other exception to the AIA applies under § 6330(e)(1), the

Court should dismiss her claim for injunctive relief.[4]

---

[3] Importantly, the parties appear to agree that this lawsuit revolves around two relevant issues. As Plaintiff states in her impermissible second response brief, "The parties are only nominally disputing the legal framework" and the two legal issues are (1) whether the particular levy noticed referenced in the complaint triggered a right to a CDP Hearing, and (2) whether a CDP hearing was requested. (ECF No. 31, PageID.325) Although the Court will strike Plaintiff's second response brief as improper under the local rules, it is relevant to note that Plaintiff agrees with the two main issues to be determined by the Court. The Court should find both of these issues in Defendant's favor, for the reasons noted above.

[4] Defendant also argued that: (1) no judicial exception to the AIA applies, and (2) neither the mandamus statute nor the Administrative Procedure Act allow McBratnie to circumvent the AIA. (ECF No. 20, PageID.124-125.) Plaintiff does not address these arguments at all, and they are therefore deemed waived. *Garrett v. Morgan Cnty. Sheriff's Off.,* No. 1:23CV2011, 2026 WL 352788, at *9 (N.D. Ohio Feb. 9, 2026) ("It is well established that, if a party fails to address an argument raised in a motion or brief in opposition, a district court may deem that party to have waived opposition to that argument."); s*ee also Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 Fed. Appx 567, 569 (6th Cir. 2013) (explaining that failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [that] claim"); *Degolia v. Kenton Cty.,* 381 F.Supp.3d 740, 759–60 (E.D. Ky. 2019) ("[I]t is well understood...that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Rouse v. Caruso*, 2011 WL 918327 at *18 (E.D. Mich. Feb. 18, 2011)) (internal quotation marks omitted)); *Albury v. Strategic Staffing Solutions*, 2025 WL 2552164 at * 3 (E.D. Mich. Sept. 4, 2025) (noting that "failure to address an argument serves as a waiver of challenging that argument.").

### 2.   The Mandamus Claim

Plaintiff also brings a claim "of the nature of Mandamus under 28 U.S. Code § 1361 *Action to Compel an Officer of the United States to Perform his Duty,* for the IRS to provide the Statutorily Required Collections Due Process hearing within 30-90 days **post complying with production of documents above.**"  (ECF No. 1, PageID.2 (emphasis in original).)

### a.   Mandamus jurisdiction

Mandamus jurisdiction in federal courts is codified at 28 U.S.C. § 1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."   "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations where the petitioner can show a clear and indisputable right to the relief sought." *In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990) (citing *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 661–62 (1978); *Kerr v. United States District Court*, 426 U.S. 394, 402–03 (1976)).

Defendant argues that Plaintiff's allegations do not survive Rule 12(b)(6) or Rule (12)(b)(1).  Indeed, the Court's jurisdiction under a Rule 12(b)(1) analysis is necessarily tied to the merits of the case under a Rule 12(b)(6) analysis, as framed

by the allegations in Plaintiff's complaint.  "The existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff."  *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011) (quoting *Maczko v. Joyce,* 814 F.2d 308, 310 (6th Cir. 1987)).

### b. Application

"Mandamus is available only if: '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff.'"  *Carson*, 633 F.3d at 491  (quoting *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (internal quotation marks and citation omitted)).  Defendant argues that Plaintiff's allegations are insufficient to state a mandamus claim as a matter of law, so dismissal is appropriate under both Rule 12(b)(1) and 12(b)(6).  The Court should agree.

First, as noted above, Plaintiff's allegations do not state that she requested a CDP Hearing with respect to her 2017 tax year, only that she requested a CAP Hearing.  Thus, her allegations do not show a "clear right to [the requested] relief" of a CDP Hearing.  *Carson*, 633 F.3d at 491.  Nor has she shown how she is legally entitled to the requested relief of "ordering the IRS to provide the internal accounting audit data necessary to participate meaningfully in the Independent

Office of Appeals hearing to determine the IRS's accuracy of the purported debt." (ECF No. 30, PageID.314.) It stands to reason if she has not sufficiently alleged entitlement to a CDP Hearing, then, absent some other authority, she has not sufficiently alleged entitlement to specific data "necessary to participate meaningfully" in said hearing.

Second, Plaintiff's allegations do not show a "clear duty to act." As noted above, there was no duty to provide a CDP Hearing, under the facts alleged by Plaintiff. To the extent she requests a CAP Hearing, as Defendant points out and as the Court noted above, there is no duty to provide a CAP Hearing at all. *Offiler,* 114 T.C. at 494, ("CAP is an administrative review program not required by statute.")..). A CAP Hearing is discretionary and "Mandamus is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Carson*, 633 F.3d at 491. (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). And as to any other requests for mandamus relief, Plaintiff has not even attempted to show any clear duty for the IRS to act. Indeed, "[o]ther federal courts readily have held that suits seeking to impose a duty on the Secretary to process a return or take other action concerning tax liabilities are barred." *Garavaglia v. United States*, 648 F. Supp. 3d 887, 896 (E.D. Mich. 2022) (Lawson, J.) (citing *Lawson v. United States Internal Revenue Servs.*, No. 15-499, 2016 WL 4179790, at *5 (D.R.I. July 8, 2016) ("The Lawsons' remaining requests for relief are injunctive and

18

declaratory in nature, effectively seeking relief in the nature of mandamus . . . . By its enactment of the Anti-Injunction Act, 26 U.S.C. § 7421, and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), Congress has made clear that neither injunctive or declaratory relief nor mandamus may be sought in federal court in connection with the collection of taxes. Therefore, sovereign immunity has not been waived and the Court's lack of subject matter jurisdiction bars these claims."), *report and recommendation adopted*, 2016 WL 4179886 (D.R.I. Aug. 5, 2016); *Kolstad v. IRS*, No. 07-0089, 2008 WL 2246458, at *2 (N.D. Tex. May 30, 2008) ("If plaintiff seeks a writ of mandamus to require the IRS to assess taxes, penalties, and interest for those years, the court lacks jurisdiction to grant such relief. The IRS has no 'nondiscretionary duty' to assess taxes on demand.") (citing 26 U.S.C. § 6201(c)(3); *Stang v. Internal Revenue Service*, 788 F.2d 564, 565 (9th Cir. 1986) (noting that the IRS may assess tax liabilities of individuals 'at any time'))).

Third, Plaintiff has another adequate legal remedy available to her in the form of a tax refund suit brought under 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a)(1), provided she follows the appropriate steps and administrative procedures.

As Plaintiff's allegations are insufficient to meet any of the three elements of the test for entitlement to mandamus relief, her mandamus claim should be dismissed.

### 3.    The Declaratory Claim

Declaratory actions are allowed in Federal Courts under 28 U.S.C. § 2201, which states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Thus, to the extent Plaintiff seeks declaratory relief, the Declaratory Judgment Act is generally "not available 'with respect to federal taxes," with a few limited exceptions.  S*ee Dickens v. United States*, 671 F.2d 969, 972 (6th Cir. 1982) (quoting 28 U.S.C. § 2201); *see also Scroggins v. Washington*, No. 2:21-CV-219, 2022 WL 292253, at *4 (W.D. Mich. Feb. 1, 2022).  As there is no indication those exceptions apply in this matter, declaratory relief is not available with respect to federal taxes, and the Court should dismiss the claim.

20

**D.     Conclusion**

Simply put, Plaintiff's claims, as alleged by the facts in her complaint, are barred by the Anti-Injunction Act, with no applicable exception. And attempting to assert claims for mandamus or injunction relief is similarly now allowed. The Court should therefore **GRANT** Defendant's motion to dismiss.  (ECF No. 20.)

Additionally, because granting Defendant's motion will dismiss this case in its entirety, the Court should also **DENY AS MOOT** Plaintiff's two motions for preliminary injunctions (ECF Nos. 21 & 25).

**IV. OPINION AND REASONING ON MOTION TO AMEND**

Plaintiff has also filed a motion to amend to add additional requests for injunctive or mandamus relief.  (ECF No. 35.)  As noted above, the motion is **DENIED.**

Since Defendant does not consent to the amendment, Plaintiff can amend only by the Court's leave, which should be given freely when justice so requires. Fed. R. Civ. P. 15(a)(2).  Rule 15(a) supports the "principle that cases should be tried on their merits" and not on technicalities, and thus "assumes 'a liberal policy of permitting amendments.'" *Inge v. Rock Fin. Corp*., 388 F.3d 930, 937 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)).  In determining whether to grant the amendment, the Court considers the factors set forth in *Foman v. Davis*, 371 U.S. 178, 182 (1962) – "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  An amendment is futile if it could not withstand a motion to dismiss.  *Thikol Corp. v. Dept. of Treasury*, 987 F.2$^d$ 376, 383 (6th Cir. 1993).

Plaintiff's request is both improper and without merit.  First, Plaintiff initially did not file a separate motion for leave to amend, but instead included her request within her response briefs (ECF No. 30, PageID.318 ¶ 7), and the local rules provide that motions cannot be combined in response briefs.  *See* E.D. Mich. LR 7.1(i) ("Motions must not be combined with any other stand-alone document.").  Second, after then filing a motion for leave to amend, Plaintiff failed to seek concurrence, as required under the local rules.  *See* E.D. Mich. LR 7.1.

Third, and most importantly, Plaintiff's proposed amended complaint (ECF No. 35-1 suffers from the same defects as her initial complaint, and/or attempts to seek relief to which she is not entitled.  Indeed, notwithstanding her characterization of the request as seeking to "amend," it appears that she is instead merely seeking to supplement her complaint under Fed. R. Civ. P. 15(d) due to "new activity since the filing of the original [c]omplaint . . .  [which] occurred on October 20, 2025 and December 15, 2025" (*Id.*, PageID.372 (citing PageID.144 & 151), rather than pursuing any new, viable theory of recovery.  Regardless, she is

still attempting to seek relief barred by the AIA, with no applicable exceptions, and this Court lacks jurisdiction to order the requested mandamus relief under 28 U.S.C. § 1361 or the declaratory relief under 28 U.S.C. § 2201.  I agree with Defendant, both with respect to the initial complaint and with respect to the proposed amended pleading, that, "[a]t bottom, the remedy here would be—and always has been—a properly brought refund suit under 26 U.S.C. § 7422."  (ECF No. 38, PageID.462.)  Neither the current pleading nor the proposed amended version fit the bill.

Any amendment would be futile.  Plaintiff's motion to amend (ECF No. 35) is **DENIED**.

## IV.  MINISTERIAL ORDERS

In addition to her response to the motion to dismiss, Plaintiff also filed a document entitled "Plaintiff's Affirmative Defenses to Defendant [IRS]'s Motion to Dismiss," which the Clerk of the Court docketed as a motion to dismiss.  (ECF No. 31.)  This document constitutes a second brief in support of her opposition to Defendant's motion to dismiss, which is not allowed under the local rules.  *See* E.D. Mich. 7.1(d)(1)(A) ("Unless the Court permits otherwise, each motion and response to a motion must be accompanied by a single brief.").  My practice guidelines provide that "[a]dditional briefing, including sur-replies, will NOT be permitted unless requested by the Court. The Court will strike any improperly filed

23

sur-replies or other briefing not contemplated by the Local Rules."[5]  Accordingly, the document (ECF No. 31) is **HEREBY STRICKEN** from the docket as contrary to the local rules and my practice guidelines.

Finally, prior to effecting service on Defendant, Plaintiff filed two motions related to service (ECF Nos. 10 & 13).  Given that service has not been effected and not challenged, those two motions are **DENIED AS MOOT**.

## IV.    PROCEDURE ON OBJECTIONS

### A.    Report and Recommendation

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

---

[5] https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=51

24

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### B.      Order on motion to amend and ministerial orders

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated:  June 12, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

25